## Brown v. Thomas

248

*Larry Brand,* for plaintiff.
*Peter Hagan,* for defendant.

PODCASY, *J.,* December 5, 1985—We have before us a motion for summary judgment.

This is a case in which a group of purchasers of homes in the residential development known as the Drifton Estates, whose homes had allegedly been damaged due to a mine subsidence, commenced suit against a number of persons and institutions, including the builder-developers of the Drifton Estates, Joseph Thomas and Hyman Mednitsky. The claim of the homeowners against the builder-developers is based on breach of warranty of habitability, strict liability under section 402A of the Restatement (Second) of Torts, negligence, intentional tortious conduct, fraud and misrepresentation.

The land involved had at one time been owned by a man named Tench Coxe, who died in 1824, owning approximately one and one-half million acres of land in eight states. A trust known as the Tench Coxe Properties Liquidating Trust was created in 1962 for the express purpose of liquidating certain of these extensive realty holdings, including the land upon which plaintiffs' homes are now located. Thomas and Mednitsky, the builder-developers, have joined as additional defendants the Tench

Coxe Properties Liquidating Trust, including Fidelity Bank, Girard Trust Bank (now Mellon Bank N.A.), First Pennsylvania Bank N.A., and Provident National Bank, all of who will hereafter be referred to as the trustee banks.

Thomas and Mednitsky claim that, when the trustee banks conveyed to them in 1966 the surface rights to the land on which Drifton Estates was built, the trustee banks failed to disclose to them that subterranean mining had taken place, and that the trustee banks had also failed to file maps indicating the areas mined and to be mined. They claim that the trustee banks were guilty of intentional tortious conduct, fraud and misrepresentation. Thomas and Mednitsky therefore claim that the trustee banks are alone liable to plaintiff homeowners, and also assert claims for contribution or indemnity.

In addition to the various pleadings, depositions have been taken of both Thomas and Mednitsky, and these constitute part of the record before us, which we must consider in ruling on the motion for summary judgment which has now been interposed by the trustee banks as additional defendants.

Pa.R.C.P. 1035 (a) and (b) provide in pertinent part as follows:

"(a) After the pleadings are closed, but within such time as not to delay the trial, any party may move for summary judgment on the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits, if any.

"(b) . . . The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

When a motion for summary judgment is interposed, the burden of proof is on the moving party to establish that there is no genuine issue as to a material fact and that he is entitled to judgment as a matter of law. Phaff v. Gerner, 451 Pa. 146, 303 A.2d 826 (1973); City of Wilkes-Barre v. Ebert, 22 Pa. Commw. 356, 349 A.2d 520 (1975).

The claim of the builder-developers against the trustee banks based on the failure to file mining maps has as its foundation the provisions of 52 P.S. §672.2, which states that "every owner, operator, lessor, lessee, or general contractor engaged in the mining of anthracite coal within this Commonwealth" is obligated to file in the office of the county commissioners of the county in which the land is located a map showing in detail the areas in which mining is to take place. Act of September 30, 1961, P.L. 1538, §2. It is perfectly clear from the record before us that the trustee banks were not engaged in the mining of anthracite coal within Pennsylvania, and therefore we can see no basis whatsoever for imposing any liability on them for failure to comply with this statute. This is a relatively easy issue to dispose of, in our opinion, and we therefore have addressed it directly at this point, so as to move on to more important matters.

The deed by which the trustee banks conveyed the land in the Drifton Estates area to Thomas and Mednitsky was made in 1966 and recorded on January 18, 1967, in Luzerne County Deed Book 1608, at page 295. This deed contains a very comprehensive release provision to the effect that the deed was made, delivered and accepted upon the express condition that the trustee banks would be wholly free from any and all liability of any nature whatsoever for damages which might occur to improvements on the surface due to surface subsidence caused by the

mining and removal of coal or other minerals. This comprehensive release provision goes on to provide that, by accepting the deed, the grantees therein, the builder-developers Thomas and Mednitsky, expressly released the trustee banks, their successors and assigns, from any duty of providing support to the surface of the land. In addition to this comprehensive release provision, the deed goes on to provide that the conveyance was made at the solicitation of the builder-developers, with full knowledge on their part of the fact that there was no right to surface support and no liability for damage to improvements on the surface due to subsidence, and that this fact had entered into and essentially affected the transaction between the parties so as to reduce the price being paid by the buyers to the sellers. Under such circumstances the comprehensive release is supported by ample consideration, and is binding on the parties. Daniels v. Bethlehem Mines Corp., 391 Pa. 195, 137 A.2d 304 (1958); Atherton v. Clearview Coal Co., 267 Pa. 425, 110 Atl. 298 (1920); Kellert v. Rochester & Pittsburg Coal & Iron Co., 226 Pa. 27, 74 Atl. 789 (1909).

During the course of his deposition, Mednitsky stated that in acquiring the land from the trustee banks in 1966, he had dealt with a man named Daniel Coxe who lived in the area and who had handled all of the negotiations on behalf of the trust. Mednitsky stated further that his belief that the land in question had not been undermined was based primarily on the fact that the Coxe family and many of their employees had lived in the area for a number of years, and that he did not think that they would have done so if the area were unsafe.

Mednitsky repeatedly stated that, if he had been aware of the fact that the land had been undermined, he would never have purchased it. He added

that he had never read the deed prior to its being recorded and that, even if he had read the deed, the provisions therein in reference to lack of surface support and the absence of liability for damage to improvements on the surface due to subsidence would not have caused him any concern inasmuch as such language was "standard" in deeds in the area in question.

Much emphasis is placed by the builder-developers upon the fact that the deed restricted the use of the surface of the land to residential or commercial purposes, and upon the statement by Mednitsky, in his deposition that Daniel Coxe, the negotiator for the trustee banks, failed to expressly state to him at the time the negotiations were taking place that the area in question had in fact been undermined. Nowhere is there any claim or assertion that Daniel Coxe, or anyone else acting on behalf of the trustee banks, ever stated that the area being sold had *not* been undermined, or that any statement was ever made which would carry with it any reasonable inference to that effect.

It seems to us that it would be a wholly fruitless exercise to allow this case to go to a jury in reference to the liability of the trustee banks. There is no indication whatsoever that the trustee banks had engaged in any mining practices, or that there was any reason why they should be aware of the fact that the area in question had actually been undermined. There is nothing to indicate that there was any intentional failure to disclose the existence of undermining in this area, or any fraud or misrepresentation. If we were to allow a recovery here, our action would effectively subject any property owner in this county who happens to live in an area that has been undermined to liability to a purchaser for mine subsidence despite the inclusion in the deed

of conveyance of language expressly pointing out the fact that the area had been, or may have been, undermined.

Individual property owners, whether they happen to own large areas or a small area, cannot be expected to check mining maps on file with the county commissioners of their county whenever they plan to sell all or any of their property. If they have purchased land knowing that it was in an area where mining was commonplace and knowing, by virtue of having had the provision in their deed to that effect, that there was no right to surface support at the time they purchased it, we fail to see how they could be expected to do more than include in the deed to their purchaser a provision placing the purchaser on notice of the fact that the area had been or may have been undermined.

The average landowner in this area in which mining has occurred hasn't the slightest idea whether his particular lot or parcel of land has or has not actually been undermined. He purchases the lot, knowing of the absence of the right to surface support, and knowing that there is a danger of subsidence. His neighbors do the same. Many people in this area live on land where there is a danger of subsidence.

It is true, as Mednitsky stated in his deposition, that there are extensive areas throughout this county in which it is a standard provision in any deed that the surface of the land is being sold, and that there is no right to surface support. The fact that this is the case does not entitle a purchaser to completely ignore such language in the deed.

A person who owns property in the undermined ares of Luzerne County does not warrant to a prospective purchaser that the land is safe from the danger of subsidence simply by the fact that he is

occupying and living on the land. Nor is the owner of the land in an undermined section of Luzerne County under any obligation to state orally to a prospective purchaser that the land has been or may have been undermined. By including in his deed an express written statement to the effect that the land has been or may have been undermined and that there is a danger of damage to improvements on the surface due to subsidence, with no right whatsoever to surface support, the owner of the property certainly does all that the law requires of him to place his purchaser on notice of this hazard. To hold otherwise would be to completely destroy the effectiveness of the standard language employed in tens of thousands of deeds throughout the county, thereby subjecting virtually every property owner in the area to potential liability to a purchaser of his land in the event of surface subsidence. This we are not prepared to do.

Other issues are presented in the motion for summary judgment in reference to the applicability of various statutes of limitation. We find it unnecessary to deal with these questions, inasmuch as there can be, in our judgment, no liability whatsoever on the part of the trustee banks in this instance. We find in this record no genuine issue as to any material fact.

## ORDER

It is hereby ordered, adjudged and decreed as follows:

(1) The motion for summary judgment interposed by the trustee banks is sustained;

(2) Judgement is entered in favor of the trustee banks; and

(3) The Prothonotary of Luzerne County is directed to mail notice of entry of this order and the accompanying opinion to all counsel of record.